UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARLYLE PHILLIP, | ) |
| | ) |
|     Petitioner, | ) |
| | ) Civil Action No. 04-11896-MLW |
| v. | ) |
| | ) |
| IMMIGRATION AND NATURALIZATION SERVICE, | ) |
| | ) |
|     Respondent. | ) |

RESPONDENT'S MEMORANDUM IN SUPPORT OF MOTION
TO RECONSIDER ORDER DATED SEPTEMBER 16, 2005, FOR GUIDANCE
ON WHETHER TO SEEK PETITIONER'S RETURN TO THE UNITED STATES,
AND FOR ADDITIONAL TIME TO RESPOND TO THE ORDER

    The Respondent Department of Homeland Security, Immigration and Customs Enforcement ("ICE"),[1] respectfully submits this memorandum in support of its Motion for Reconsideration of the Court's Order Dated September 16, 2005, For Guidance on

---

[1] Effective March 1, 2003, the Immigration and Naturalization Service was "abolished" by section 471 of the Homeland Security Act of 2002, Pub. L. 107-296, tit. IV, subtits. D, E, F, 116 Stat. 2135, 2192 (Nov. 25, 2002). Most of the interior enforcement functions of the former INS were transferred to the Department of Homeland Security ("DHS"), Directorate of Border and Transportation Security, Bureau of Immigration and Customs Enforcement. The official of the Department of Homeland Security responsible for enforcement of Petitioner's removal order in the instant action is Bruce Chadbourne, Field Office Director for Detention and Removal, Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE") in Boston, Massachusetts. The official with custody of Petitioner prior to his removal was Thomas M. Hodgson, the Sheriff of Bristol County. Sheriff Hodgson should be substituted as the proper Respondent. See Rumsfeld v. Padilla, 124 S. Ct. 2711 (2004); Vasquez v. Reno, 233 F.3d 688 (1st Cir. 2000).

Whether to Seek the Petitioner's Return to the United States, and For Additional Time to Respond to the Order.

BACKGROUND

On September 1, 2004, this Court entered an Order ordering the service of the petition for habeas corpus and, among other things, directing that "[t]he Respondent shall provide the Court with at least 48 hours advance notice of any scheduled deportation or removal of petitioner." Subsequently, on September 7, 2005, the Court was notified that the Petitioner had been removed to Trinidad and Tobago on April 7, 2005. The 48 hours' advance notice was not provided to the Court as required. On September 16, 2005, the Court issued a further Order which provides in part:

> Accordingly, it is hereby ORDERED that:
>
> 1.      The government shall, by September 30, 2005, file affidavits addressing why the court should not institute criminal contempt proceedings, including: what efforts were made to inform the Department of Homeland Security, Immigration and Customs Enforcement of the notice requirement of the September 1, 2004 Order; the official(s) responsible for Phillip's deportation; the reason(s) why the required notice to the court was not given; whether other orders requiring notice to the District Court for the District of Massachusetts prior to deportation have been violated and, if so, when and in which case(s); what steps, if any, have already been taken to assure that such orders are not violated in the future; and what additional steps, if any, will be taken to assure that such orders are not violated in the future.
>
> 2.      The pending motions (Dockets Nos. 3 and 6) are MOOT.

## ARGUMENT

The government recognizes that the Court's September 1, 2004, Order was violated, and that the violation is a serious matter. The government desires to provide the Court with a full explanation for the error and steps taken to ensure any such error is not repeated.[2] However, as explained below, criminal contempt should only be considered as a last resort, and, moreover, the Court's reference to possible criminal proceedings implicates the Fifth Amendment rights of the government officials involved and may complicate the government's effort to investigate the matter. Also, the petitioner's claims are not moot, as suggested in paragraph 2 of the Order. Moreover, the government stands ready to attempt to locate the Petitioner and bring him back to the United States, at government expense, if the Court and the Petitioner so desire. The government seeks the Court's guidance on this issue. Accordingly, the Respondent respectfully requests that the Court reconsider and amend certain aspects of its Order.

---

[2] It appears that in the last 15 years this problem has occurred twice in this district. See Gordon v. Ashcroft, Civil Action No. 02-30199-MAP, Memorandum and Order Regarding Report and Recommendation Re: Respondent's Motion To Dismiss, (September 26, 2003) (copy attached).

    A.    This Matter Should More Appropriately Be Investigated For Possible Civil Contempt

Criminal contempt should only be initiated as a last resort. "While a court has the authority to initiate a prosecution for criminal contempt, its exercise of that authority must be restrained by the principle that 'only [t]he least possible power adequate to the end proposed' should be used in contempt cases." Young v. United States ex rel. Vuitton, 481 U.S. 787, 801 (1987), quoting United States v. Wilson, 421 U.S. 309, 319 (1975). Here, the Court has not presented, and the government is unaware of any information suggesting that the violation of the September 1, 2004, Order was "willful" or in conscious defiance of the Court's Order. See United States v. Michaud, 928 F.2d 13, 15 (1st Cir. 1991). "The requirement of willfulness contemplates knowledge that one is violating a court order." United States v. Mourad, 289 F.3d 174, 180 (1st Cir. 2002). Accordingly, if contempt sanctions are contemplated, the Respondent believes they should be civil only.

The Court's September 16, 2005, Order suggests that the Court may initiate criminal proceedings against the government officials involved in the failure to provide advance notice of the Petitioner's removal, and it simultaneously instructs those same government officials to file affidavits detailing, among other things, "what efforts were made to inform the Department of Homeland Security, Immigration and Customs Enforcement of the notice requirement of the September 1, 2004 Order; the official(s)

responsible for Phillip's deportation; and the reason(s) why the required notice to the court was not given." To present the prospect of criminal proceedings and simultaneously order the targets of the Court's inquiry to testify through affidavits regarding the details of their conduct raises serious Fifth Amendment issues. As stated in Hoffman v. United States, 341 U.S. 479, 486 (1951), "[t]he privilege afforded [by the Fifth Amendment] not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime."  See also Malloy v. Hogan, 378 U.S. 1, 14 (1964) (privilege held applicable where answering questions "might be dangerous because injurious disclosure could result").

The threat of criminal proceedings and the Fifth Amendment rights of the relevant government employees poses obstacles to the government's ability to investigate the circumstances of the erroneous removal of the Petitioner without notice to the Court and to fully respond to the Court's request for information. The practical difficulties arising from the Order as it now stands may impede a complete investigation of the matter and preclude a full response to the Court's inquiry. For this additional reason, the Court's September 16, 2005, Order should be amended to refer to no more than civil contempt sanctions.[3] Attached as Exhibit 2 for the Court's consideration is

---

[3] Moreover, even if criminal conduct were reasonably apparent (which it is not), the investigation would appropriately be handled by a prosecutor, not the Court. Fed. R. Crim. P.

an Order dated May 1, 2003, entered by Judge Ponsor in the only other situation known to the undersigned in which a similar violation occurred in this District. The government respectfully urges the Court to adopt the approach followed by Judge Ponsor in that case.

      B.     <u>The Pending Motions (Docket Nos. 3 and 6) Are Not Moot</u>

In ruling that the pending motions are moot, the Court may have concluded that the deportation of the Petitioner has rendered the underlying case moot. However, the deportation of an alien after his having filed a habeas petition does not render the petition moot. <u>Leitao v. Reno</u>, 311 F.3d 453, 456 (1st Cir. 2002) ("We . . . hold that the bar on readmission of a removed alien is a legally cognizable collateral consequence that preserves a live controversy even after deportation of the petitioner."); <u>see also</u> <u>Singh v. Waters</u>, 87 F.3d 346, 349 (9th Cir. 1996) (deportation in violation of administrative stay order warrants habeas corpus relief from the execution of the deportation but not from the order itself). For this reason, the Court's determination that the pending motions were moot was in error.

---

42(a)(2); <u>In re: United States</u>, 398 F.3d 615, 618 (7th Cir. 2005) ("In the rare situations when a prima facie case of criminal contempt has been made out, and the contempt is not committed in the judge's presence (and thus amenable to summary disposition), the judge must turn the matter over to a prosecutor rather than assume an inquisitorial role inappropriate to the Judicial Branch.").

The Respondent nonetheless does not request that the Court rule on the pending motions, as the Court lacks jurisdiction to do so. The Respondent is presently moving to transfer this case to the United States Court of Appeals For the First Circuit, pursuant to Section 106(c) of the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231 ("RIDA"), which mandates such transfers. The RIDA, which became effective May 15, 2005, eliminated habeas jurisdiction to entertain challenges to the validity of orders of removal and provided for exclusive jurisdiction for such claims in the courts of appeal. Congress further directed that any habeas claim challenging the validity of an order of removal pending on the date of enactment shall be transferred to the court of appeals.

The Respondent does not contend that the transfer of this case to the Court of Appeals deprives this Court of jurisdiction with respect to any contempt proceedings, as such proceedings would be distinct from the merits of the underlying case. However, the Petitioner's challenge to the removal order, which is not moot, must be transferred to the Court of Appeals for final disposition.

  C. The Government Will Attempt To Locate the Petitioner and Invite Him To Return to the United States At Government Expense If the Court Deems This Appropriate

The government stands ready to attempt to locate the Petitioner and invite him to return to the United States at the Government's expense if this Court deems such a

course of action appropriate.  When a similar error occurred in Gordon v. Ashcroft (cited in fn.2 above), the Department of Homeland Security ("DHS") promptly located the petitioner and offered to return him to the United States at no expense.  (The petitioner in that case declined.)  The DHS is willing to make a similar effort in this case; however, it hesitates to do so because it appears that the Petitioner's habeas petition has no conceivable likelihood of success on the merits, cf. Arevalo v. Ashcroft, 344 F.3d 1, 7 (1st Cir. 2003) (an alien seeking a stay of removal must demonstrate a likelihood of success on the merits), and the expense to the taxpayer may not be justified.[4]  The Respondent requests the Court's guidance on this issue.

    D.    The Court Should Allow the Government 14 Days After a Decision On This Motion In Which To Respond to the Court's September 16, 2005, Order

Because of the complications of seeking information from government employees under a cloud of potential criminal proceedings, the government respectfully requests that the Court postpone the date for the government to provide the information requested by the Court until 14 days after the Court rules on this motion.

---

[4] Also, the Petitioner, if returned to the United States, would be detained pending removal.

## CONCLUSION

For the foregoing reasons, the Court should (a) amend its September 16, 2005, Order to omit reference to potential criminal contempt proceedings, (b) vacate its determination that the pending motions are moot, (c) advise the government whether to seek the return of the Petitioner to the United States, and (d) allow the government to and until 14 days after a ruling on this motion in which to respond to the Order.

    Respectfully submitted,

    MICHAEL J. SULLIVAN
    United States Attorney

By:   /s/ George B. Henderson, II
    George B. Henderson, II
    Assistant U.S. Attorney
    John Joseph Moakley U.S. Courthouse
    1 Courthouse Way, Suite 9200
    Boston, MA 02210
    (617) 748-3272

Dated: September 23, 2005

### CERTIFICATE OF SERVICE

I hereby certify that I caused true copy of the above document to be served upon pro se petitioner by mail on September 23, 2005, at petitioner's most recently provided United States address outside of confinement:

Carlyle Phillip
c/o Kelvin Quamina
280 Malden Street
Springfield, MA 01108

    /s/ George B. Henderson, II
    George B. Henderson, II
    Assistant U.S. Attorney

**Exhibit 1**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD ANDRE GORDON,        )
        Petitioner   )
                     )
        v.           ) CIVIL ACTION NO. 02-30199-MAP
                     )
JOHN ASHCROFT, Attorney General)
  of the United States,      )
        Respondent   )

MEMORANDUM AND ORDER REGARDING REPORT AND RECOMMENDATION
RE: RESPONDENT'S MOTION TO DISMISS

September 26, 2003

PONSOR, U.S.D.J.

    This is a challenge to a final order of removal issued against the petitioner by the Board of Immigration Appeals. Respondent filed a motion to dismiss, and on March 19, 2003 Magistrate Judge Neiman recommended that that motion be allowed.

    Upon de novo review, the Report and Recommendation is hereby ADOPTED and the motion to dismiss is ALLOWED. Magistrate Judge Neiman is absolutely correct that the five-year bar requires dismissal in this case. Moreover, it is clear that the crime petitioner was convicted of constituted an aggravated felony.

    One other matter deserves mention. Despite this court's order, the petitioner was in fact deported while this case was pending. On May 1, 2003, this court issued an order to the respondent requiring answers to specific questions regarding the

erroneous deportation.  The respondent's action, directly in the teeth of a court order, was obviously an extremely serious matter.

On May 22, 2003, this court received and carefully reviewed a detailed response submitted by the respondent regarding the deportation.  Having considered the matter carefully, the court is convinced that the deportation was entirely accidental and the product of a unique set of unfortunate circumstances.  The court was particularly impressed with the respondent's immediate willingness to arrange for the petitioner's return to this country, at the respondent's expense.  Apparently, the petitioner, being now in Jamaica, indicated that he preferred to stay.

It is crucial that the respondent not repeat the grave error that was made in this case.  Based on the respondent's submission, any such repetition appears highly unlikely.

In sum, for the foregoing reasons, the respondent's motion to dismiss is ALLOWED.  The clerk is ordered to enter judgment for the respondent.

It is So Ordered.

*/s/ Michael A. Ponsor*
MICHAEL A. PONSOR
U. S. District Judge

**Exhibit 2**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD ANDRE GORDON,       )
Petitioner                  )
                            )
        v.                  ) CIVIL ACTION NO. 02-30199-MAP
                            )
JOHN ASHCROFT, Attorney General )
of the United States, ET AL,    )
Respondents                 )

ORDER

May 1, 2003

PONSOR, D.J.

The petitioner has filed a challenge to a final order of removal issued against him by the Board of Immigration Appeals. The matters raised by the petition have been briefed and the case was originally set down for hearing on May 1, 2003. Recently, the court vacated this hearing date, with the intention of addressing the issues raised by the petition on the papers.

The court has been informed of another matter, independent of the issues raised by the <u>habeas</u> petition, that is of concern. On December 10, 2002, Magistrate Judge Neiman issued an order (Docket No. 2) requiring the respondent to provide the court with notice of any scheduled deportation or removal of the petitioner, pending a ruling on petitioner's application. This order was

DOCKETED

(14)

reiterated on March 19, 2003, when Magistrate Judge Neiman formally allowed the petitioner's request for stay of removal (Docket No. 1). Magistrate Judge Neiman's marginal ruling refers to the court's prior order of December 10, 2002.

Despite these two orders, the petitioner was apparently deported without any prior notice to this court. While it is perhaps true, as petitioner asserts, that the petitioner's physical removal does not moot the issues raised by his petition for <u>habeas</u> corpus, it is a matter of grave concern that the respondent would proceed with deportation in the teeth of orders issued by this court.

With this in mind, the respondent is hereby given until May 23, 2003 to submit a memorandum explaining in detail the circumstances by which the petitioner was deported in violation of this court's order. Among any other topics the respondent may wish to address, the court expects answers to the following questions. First, was the respondent aware of the order entered by this court staying deportation? Second, what is the procedure used by the respondent to insure that such orders are communicated to responsible personnel? Who made the decision to deport the petitioner, and when was that decision made? What is the respondent's position with regard to the applicable law

2

controlling a situation of this sort, where the respondent has taken action contrary to a court order? What have other courts done in similar circumstances? Is the contempt sanction available? In sum, the court requests a detailed summary of the factual background leading up to the deportation of the petitioner, as well as a detailed presentation of the law governing the court's proper response to this fait accompli.

The petition for <u>habeas</u> corpus will remain pending, awaiting the Government's submission.

It is So Ordered.

/Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge

3