UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RICHARD ANDRE GORDON,          )
                               )
              Petitioner       )
                               )      Civil Action No.
     v.                        )      02cv30199-MAP
                               )
                               )
JOHN ASHCROFT, et al.          )
                               )
              Respondents

**RESPONDENT'S MEMORANDUM IN RESPONSE
TO ORDER DATED MAY 1, 2003**

**INTRODUCTION**

     This memorandum is submitted in response to the Court's

May 1, 2003, order requiring the respondent[1] to explain the

circumstances surrounding the petitioner's deportation.

The respondent removed the petitioner to Jamaica on April 7,

2003, without providing advance notice to the Court.  As

discussed below, the lack of advance notice was inadvertent

---

[1] The Homeland Security Act of 2002 ("HSA") abolished the
Immigration and Naturalization Service.  Most of the
interior enforcement functions of the former INS were
transferred to the Department of Homeland Security ("DHS"),
Directorate of Border and Transportation Security, Bureau of
Immigration and Customs Enforcement ("ICE").  Pub. L. 107-
296, tit. IV, subtit. D, E, F, 116 Stat. 2135, 2192 (Nov.
25, 2002).  Under the HSA and Fed. R. Civ. P. 25(d)(1), the
responsive successor official is automatically substituted
as the respondent.  At present, the responsive official here
is Steven J. Farquharson, Interim District Director for the
Bureau of Immigration and Customs Enforcement in Boston, MA.

and not the result of conscious or willing defiance of the
Court's order.

## FACTS

### A.    General Procedures for Notification of Court

Frank Crowley, an attorney with the DHS and a Special
Assistant United States Attorney for immigration matters
within the District of Massachusetts, has responsibility for
notifying courts within the district of scheduled
deportations when the enforceability of the deportation
orders are the subject of pending litigation.  Ex. A, ¶ 1.
In order to meet that responsibility, Crowley
notifies Supervisory Detention and Deportation Officer
Joseph A. O'Malley and certain other ICE officers of
pending court actions.  That notice instructs that Crowley
is to be given five days advance notice of any scheduled
deportation.  Upon receipt of notice of a scheduled
deportation, Crowley in turns notifies the court.  Ex. A, ¶
5.

Crowley has been a Special Assistant United States
Attorney responsible for immigration matters since April
1990, with specific responsibility for handling habeas
corpus cases.  To the best of his knowledge, the instant
case is the first time since April 1990, that a habeas
corpus petitioner within the District of Massachusetts has

2

been deported without compliance with court-ordered notice.
Ex. A, ¶ 17.  Efforts are underway to improve the
notification system at ICE to eliminate the possibility of a
deportation without required notice to the court.  In
particular, the ICE is developing a central database
containing any federal court restrictions on the
enforceability of deportation, removal, and exclusion orders
in individual cases.

B.    The Petitioner's Removal

On December 10, 2003, the Court ordered that "the
respondent provide the court with notice of any scheduled
deportation or removal of the petitioner."  Ex. A,
Attachment 1.  On December 13, 2002, Special Assistant
United States Attorney Frank Crowley communicated the
advance notice requirement by e-mail to three DHS officers:
Lead Detention Enforcement Officer William P. Sansone,
Supervisory Detention and Deportation Officer Joseph A.
O'Malley and Deportation Officer Louis A. Mahar.  Ex. A,
¶¶ 6, 7.  At that time,  these three officers were
responsible for various aspects of removal proceedings,
including supervising detention and removal functions
(O'Malley) obtaining travel documents (Mahar), scheduling
removal and providing advance notice to Crowley when so

3

instructed (Sansone). Ex. B, Declaration of Joseph A. O'Malley, ¶¶ 8-13.

Crowley's e-mail advised that the Court required 48-hours advance notice of any scheduled removal and instructed that no removal could be effected unless Crowley was given five days advance notice. Ex. A, Attachment 2. O'Malley opened the e-mail the same day it was sent.[2]   Ex. A, ¶ 7; Ex. B, Declaration of Joseph O'Malley, Supervisory Detention and Deportation Officer, ¶ 7.

On March 10, 2003, Sansone, the officer responsible for providing advance notice of removals to Crowley, changed jobs. In his new job of Criminal Investigator/Special Agent, Sansone was not involved in removal proceedings. He did, however, provide training and assistance on an occasional basis between March 10 and 28, 2003. Sansone's former assistant, Alex Godinez, assumed Sansone's job and a

---

2

Crowley's e-mail archive do not contain any receipts indicating that Sansone or Mahar opened his December 13, 2002, e-mail. The absence of an archived receipt means either that the message was not opened by the recipient or that the record of receipt was not archived by Crowley.   In addition, although Crowley's e-mail archives do not contain a record of him having re-sent the notification on December 27, 2002, apparently such an e-mail was sent because a hard copy was provided to Crowley by O'Malley, Ex. A, Attachment 3.   In addition, Crowley's e-mail archives indicate the second message was opened by Sansone (December 27, 2002), Mahar (December 30, 2002) and O'Malley (February 5, 2003).   Ex. A, ¶¶ 8-10, and Attachments 3 and 4.   Ex. B, ¶ 13.

4

new employee, Mark Gentile, was assigned to the ICE/Boston
Travel Section.  Godinez had been assigned to the division
only since September 2002 and Gentile had no previous
experience in the travel section.  Ex. B, ¶¶ 14-15.

Sometime before March 18, 2003, Mahar obtained travel
documents for the petitioner and the file was sent to the
travel section for scheduling removal.  On March 18, 2003,
Gentile scheduled the petitioner's removal for April 7,
2003.  Gentile did not send notice of the scheduled removal
to Crowley.  Ex. A, ¶¶ 13, 14;  Ex. B, ¶¶ 19, 20.  Godinez
and Gentile were not aware of Crowley's e-mail instruction
for advance notice and were not generally aware of the
protocol for advance notice to Crowley when court cases
challenging the enforceability of deportation orders were
pending.  Ex. B, ¶ 21.

On April 7, 2003, Crowley learned through the
petitioner's counsel that the petitioner had been deported.
Ex. A, ¶ 14.

C.    Efforts to return petitioner to the United States

Upon learning of the petitioner's removal, Crowley
contacted the assistant district director for detention and
removal, Brad Chadbourne, who immediately instructed his
staff to return the petitioner to the United States.    Ex.

5

A, ¶ 19. Accordingly, the ICE took the steps outlined below.

    - April 7, 2003: Deportation Officer James Straut and O'Malley attempted to contact the petitioner's counsel, Michael Moore, to find out where the petitioner was living in Jamaica. Ex. B. ¶ 24.

    - April 11, 2003: O'Malley tried to contact Moore by telephone and letter, again seeking information about the petitioner's address. O'Malley also sought assistance from the ICE/Kingston Jamaica. Ex. B, ¶¶ 25, 26.

    - April 14, 2003: ICE/Kingston notified ICE/Boston that Jamaican immigration authorities would provide assistance. Ex. B, ¶ 27.

    - April 16, 2003: ICE/Kingston notified ICE/Boston that Jamaican immigration and local officials traveled to the petitioner's address in Mount Salem, St. James, Jamaica, but could not locate the petitioner. At the same time, the officials informed the petitioner's family of the situation and asked family members to have the petitioner contact ICE/Kingston. Ex. B, ¶ 28.

    - April 16, 2003: Moore provided O'Malley with a telephone number for the petitioner's mother, Janice Peart. O'Malley attempted unsuccessfully to reach Peart that same day. O'Malley also communicated with ICE/Kingston to ensure

that any information was forwarded to Boston.  Ex. B, ¶¶ 30, 31.

- April 18, 2003: O'Malley again called Peart and left a message; she returned his call later that day. O'Malley explained that the petitioner had been deported without proper notification being given to the court and that he had a right to be returned to the United States at the government's expense.  Peart told O'Malley that her son was aware of the situation and he did not want to return to the United States, where he would remain in ICE custody. Peart said that her son did not have a telephone number, but she stated she would contact his lawyer.

- April 28, 2003: Jamaican immigration officers interviewed the petitioner; he informed the officials that he was reluctant to return to the United States.

- April 29, 2003: ICE/Kingston officers interviewed the petitioner by telephone and he reiterated that he did not want to return to the United States.

- As of the date of this memorandum, the respondent is willing and able to expedite the petitioner's return to the United States at government expense if the petitioner so desires.  Ex. B, ¶ 35.

## RESPONSE TO COURT ORDER

### I.   WAS THE RESPONDENT AWARE OF THE ORDER ENTERED BY THIS COURT STAYING DEPORTATION?

The respondent was aware of the Court order requiring advance notice of any scheduled deportation.[3]   The respondent's counsel, Crowley, was aware of the order and took specific steps to ensure that the order was communicated to officials responsible for executing removal orders.   Ex. A, ¶¶ 6-11.   In addition, ICE/Boston officers removal and deportation officers were made aware of the Court's order.   Id.; Ex. B, 7-13.   9-11; Ex. B, ¶ 13.

Compliance with the Court's notice requirement failed because employees inexperienced in the established procedures, namely, ICE Detention Enforcement Officers Mark Gentile and Alex Godinez, were unaware of the protocol of informing Crowley of scheduled deportation dates so that Crowley could notify the courts.   Gentile and Godinez also did not know about the e-mails from Crowley specifically concerning the petitioner.   Ex. B, ¶ 21.

### II.   WHAT IS THE PROCEDURE USED BY THE RESPONDENT TO INSURE THAT SUCH ORDERS ARE COMMUNICATED TO RESPONSIBLE PERSONNEL

As a matter of administrative policy, the ICE/Boston provides advance notice to the court of a scheduled

---

[3]   The respondent does not read the December 10, 2002, order as staying deportation, but only as requiring advance notice.

deportation when it is aware of a habeas corpus petition challenging the enforceability of a deportation order.[4] Ex. A, ¶ 5. Cf. Fuller v. INS, 144 F.Supp.2d 72 (D. Conn. 2000) (similar practice not followed where INS not served; court finding habeas corpus jurisdiction not thereby impaired despite actual deportation). The Court's order made notice obligatory and not merely a matter of administrative policy.

In Massachusetts, when Crowley receives notice of a habeas corpus petition challenging the lawfulness of a removal, deportation, or exclusion order, he immediately sends an e-mail to an officer of the ICE's Detention and Removal section. Ex. A, ¶ 5. The e-mail identifies the alien petitioner by name and administrative file number ("A number"), and reads as follows:

> This alien, [alien petitioner's name and file number], has filed a habeas action in MA USDC.
>
> THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS MUST BE **PROVIDED 48 HOURS (TWO (2) FULL BUSINESS DAYS) ADVANCE NOTICE** OF ANY SCHEDULED REMOVAL. IN ORDER TO COMPLY WITH THE COURT'S ORDER, NO REMOVAL MAY BE EFFECTED UNLESS SAUSA FRANK CROWLEY IS FIRST GIVEN **FIVE (5) FULL**

---

[4] This notice requirement is an administrative policy practice independent of and supplementary to orders, such as the order issued in the instant case. The policy calls for at least 48 hours (two business days) notice of scheduled removal, when possible, or shorter notice when circumstances make 48 hours notice impossible. Ex. A, ¶ 5. A court order for a greater notice period or for a stay would supersede any administrative practice.

**BUSINESS DAYS** ORAL NOTICE OF SCHEDULED REMOVAL
(617-565-2415).

Frank Crowley/SAUSA/Boston

<u>See</u> Ex. A, ¶ 6.

### III. **WHO MADE THE DECISION TO DEPORT THE PETITIONER AND WHEN WAS THE DECISION MADE?**

In order to answer this question, it is necessary to explain the general procedures for executing an order of deportation. When an individual is subject to a final order of deportation, the DHS routinely commences procedures to execute the order, including obtaining the necessary travel documents. The travel documents may include identity documents and other authorizations issued by the country to which the alien is to be deported. <u>See generally</u> Ex. B, ¶ 10. Once the necessary travel documents have been issued by the receiving country, travel arrangements are made from the alien's place of detention through any intermediate locations to the country of deportation. <u>See id</u>. The process occurs routinely in cases in which there is a requirement for advance notice to the court.[5] However, if

---

[5]

Once a scheduled date for execution of an order of removal, deportation, or exclusion is communicated by the Detention and Removal function of ICE to Crowley or another attorney handling a habeas corpus challenge to the enforceability of an order of deportation, the court is provided with written and oral notice of  scheduled execution. <u>See</u> Ex. A, ¶ 5; <u>see generally</u> Ex. B, ¶ 12.

advance notice is required, notice will be given to the court before the scheduled departure date.

The decision to execute the order of deportation against the petitioner was not made by any one individual, but occurred in the course of the routine administration a deportation order. After Mahar obtained travel documents for the petition, the file was sent to the travel section for scheduling of removal. Gentile then scheduled the removal but, because he was new to the job and did not know about the notification requirement, he did not inform Crowley of petitioner's scheduled departure. Ex. B, ¶¶ 18-21. In sum, no one individual was responsible for the decision to deport the petitioner on April 7, 2003.

## IV. **WHAT IS RESPONDENT'S POSITION WITH REGARD TO APPLICABLE LAW CONTROLLING A SITUATION OF THIS SORT.**

### A.   Affect on the pending habeas corpus petition

Under the circumstances of this case, the removal of the petitioner does not affect the Court's jurisdiction over the pending case. While execution of a deportation order generally precludes judicial review under the former[6] 8

---

[6] The former statutory judicial review provisions generally apply to petitioner's case under section 309(c)(1) of the Illegal Immigration Reform And Immigrant Responsibility Act of 1996, enacted as Division C of the Departments of Commerce, Justice, and State, and the Judiciary Appropriations Act for 1997,   Pub. L. No. 104-208, 110 Stat. 3009, ___ ( enacted Sept. 30, 1996) ("IIRIRA").

11

U.S.C. § 1105a(c),[7] the First Circuit has held that a lawful

removal of an alien while an appeal from a district court

habeas decision was pending may not necessarily defeat the

court's jurisdiction to consider the appeal.  Leitao v.

Reno, 311 F.3d 453, 456 (1st Cir. 2002).  In addition, at

least one court has held a deportation in violation of an

administrative stay warrants habeas corpus relief from the

execution of the deportation order, but not from the order

itself.    Singh v. Waters, 87 F.3d 346, 349 (9th Cir. 1996).

     In Singh, 87 F.3d at 347, the petitioner filed a motion

to reopen his deportation order before an immigration judge.

The judge ordered a stay of deportation while he considered

the appeal.  By the time the stay entered, the petitioner

was on an airplane headed out of the country.  Once

deported, the petitioner filed a habeas corpus petition

challenging his deportation in violation of the

administrative stay.  The court held that the petitioner

should be returned to the United States where he could

remain until the immigration judge decided his case.  Id. at

350.[8]  The instant case differs substantially from Singh in

---

[7] "An order of deportation or of exclusion shall not be
reviewed by any court . . . if he has departed from the
United States after the issuance of the order."  Former
section 106(c) of the Immigration and Nationality Act, 8
U.S.C. § 1105a(c).
[8] In Singh, the petitioner's attorney filed a motion for a
stay of deportation at 1:26 p.m.  At 2:00 p.m., the INS

12

that the petitioner has not challenged the execution of the
order of deportation and has stated that he does not want to
return to the United States at this stage in the
proceedings.

In the instant case, the Court retains jurisdiction to
consider the merits of the habeas corpus petition

B.  **What action should/can be taken against the
    government, including contempt?**

Contempt or other sanctions are not appropriate because
the violation was not willful and the government has taken
all reasonable steps to remedy the situation.

Civil contempt, which is designed to coerce a party to
remedy a wrong, is not available because the government has
attempted assiduously to remedy the wrong by bringing the
petitioner back to the United States. See United States v.
Marquardo, 149 F.3d 36, 39 (1st Cir. 1998) (purpose of civil

---

attorney informed the judgme that Singh was on a plane
scheduled to depart at 2:05 p.m.  At 2:11 p.m., the judge
issued an order staying the deportation.  In finding the
deporation unlawful, the court stated that the INS could
have radioed the plane to request that it return or placed
Singh on a plane returning to the United States once the
plane landed at its first destination.  Federal regulations
now provide that an administrative stay of removal "shall
cease to have effect if granted (or communicated) after the
alien has been placed aboard an aircraft or other conveyance
for removal and the normal boarding has been completed."  8
C.F.R. § 241.6(c) (2002).

13

contempt is to coerce compliance). It has been the
petitioner's choice not to return.[9]  Ex. B, ¶¶ 23-35.

Moreover, to the extent civil contempt would impose a
monetary penalty on the government, it is barred by
sovereign immunity.   United States v. Horn, 29 F.3d 754,
(1st Cir. 1994).  While a fine could be imposed on a "rogue"
federal employee who acted outside the bounds of his
authority, id. at 766-67 and n. 14, the facts of this case
do not support such a sanction.   Blame for the violation of
the court order lies with a notification system within the
agency, which did not contemplate changes in personnel.
Under such circumstances, civil contempt against an
individual government employee would be unwarranted.
See also United States v. Starusko, 729 F.2d 256, 264 (3d
Cir. 1984) (noting doubts about whether the government was
subject to contempt sanctions).

Criminal contempt also is unavailable because the
petitioner's deportation without compliance with the Court's
advance notice order was not "willful" or in conscious
defiance of the Court's order.   United States v. Michaud,
928 F.2d 13, 15 (1st Cir. 1991).   "The requirement of

---

[9] Should petitioner prevail substantively, he would remain
subject to detention pending the INA section 212(c) relief
phase of any remanded administrative proceedings due to his
criminal record.   Demore v. Kim, __ U.S. __ (2003) (2003 WL
1960607).

14

willfulness contemplates knowledge that one is violating a
court order." United States v. Mourad, 289 F.3d 174, 180
(1st Cir. 2002); United States v. Marquardo, 149 F.3d 36, 43
n.4 (1st Cir. 1998) (same).   In addition, it is doubtful
that criminal contempt could be imposed against the
"government, _qua_ government."   Starusko, 729 F.2d at 263.

The respondent's removal of petitioner from the United
States without compliance with the Court's advance notice
requirement was due to insufficient communication and
training within the ICE Detention and Removal Travel Section
coupled with inexperienced officers assuming new job
responsibilities.   Ex. B, ¶¶ 14-21.   There is no indication
that the violation was conscious, knowing or willful.
United States v. Mourad, 289 F.3d at 180.     Therefore, a
sanction is unwarranted.

## CONCLUSION

The respondent sincerely regrets that through mistake
or inadvertence it did not comply with the Court's
notification order.   In addition, the respondent stands
ready to return petitioner to the United States at its
expense.   The Court should continue to adjudicate the

15

instant petition and should not impose any sanction upon the government.

                                    Respectfully submitted,
                                    MICHAEL J. SULLIVAN
                                    United States Attorney

                          By:       _____
                                    KAREN L. GOODWIN
                                    Assistant U.S. Attorney
                                    1550 Main Street
Dated: May 21, 2003                 Springfield, MA 01103

                            CERTIFICATION

     This is to certify that a copy of the foregoing was
mailed this date, postage prepaid, to Michael G. Moore, 20
Maple Street, Springfield, MA 01103.

                          _____
                          Karen L. Goodwin

                                16

## DECLARATION OF FRANK CROWLEY, SPECIAL ASSISTANT UNITED STATES ATTORNEY, DEPARTMENT OF HOMELAND SECURITY

Pursuant to the authority of 28 U.S.C. § 1746, I, Frank Crowley, Special Assistant United States Attorney, Department of Homeland Security, declare as follows:

1. I am a Special Assistant United States Attorney ("SAUSA") for the United States Department of Homeland Security ("DHS") in Boston, Massachusetts. Prior to March 1, 2003, the effective date of my DHS employment, I had been a SAUSA for the former United States Immigration and Naturalization Service since April 1990.

2. My responsibilities include defending the Department of Homeland Security in habeas corpus litigation filed in the Massachusetts district court.

3. In the course of litigation frequently a court may order that it be provided advance notice of any scheduled deportation or removal of a habeas corpus petitioner.

4. In the case of Gordon v. Ashcroft, et al., 02cv30199-MAP (D. Mass. filed Dec. 6, 2002), I received through the mail an order from the Court dated December 10, 2002, directing that "[t]he court also orders that the respondent provide the court with notice of any scheduled deportation or removal of the petitioner." Attachment 1,



GOVERNMENT EXHIBIT

A

hereto.  The December 10, 2002, order arrived in an envelope
postmarked December 12, 2002, Springfield, Massachusetts.
Id.  My records indicate that this envelope and order were
received by me on December 13, 2002.

5. It is my practice that when a court order affecting
the ability of the Department of Homeland Security ("DHS"),
Bureau of Immigration and Customs Enforcement ("ICE"), to
execute an order of deportation, removal or exclusion, comes
to my attention, or when the existence of a habeas corpus
action challenging the validity of such an order in an
individual case comes to my attention, I generate and send
an e-mail to Supervisory Detention and Deportation Officer
Joseph O'Malley and certain other ICE officers indicating
that a habeas corpus action has been filed, and that 5 days
advance oral notice of a scheduled deportation must be
provided me in order to provide the court in turn with at
least 2 business days notice of the scheduled deportation,
removal or exclusion.  When I am provided such notice of a
scheduled date by ICE, I then file a notice of Intent to
Execute the order with the court when there is time to do
so, and telephone the Clerk of Court to advise of the
filing.

6.    In the case of Gordon v. Ashcroft, et al.,

2

02cv30199-MAP (D. Mass. filed Dec. 6, 2002), on December 13, 2002, the date of my receipt of the court's order in that case requiring advance notice of any deportation or removal (see ¶ 4, infra), I generated and sent an e-mail as described in ¶ 5, with a return receipt feature, as follows:

> All:
>
> **This alien, Richard Andre GORDON (A41 350 016), has filed a habeas corpus action in the Massachusetts USDC.**
>
> **THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS MUST BE PROVIDED 48 HOURS (TWO (2) FULL BUSINESS DAYS) ADVANCE NOTICE OF ANY SCHEDULED REMOVAL.  IN ORDER TO COMPLY WITH THE COURT'S ORDER, NO REMOVAL MAY BE EFFECTED UNLESS SAUSA FRANK CROWLEY IS FIRST GIVEN FIVE (5) FULL BUSINESS DAYS ORAL NOTICE OF SCHEDULED REMOVAL (617-565-2415).**
>
> **Frank Crowley/SAUSA/Boston**

See also Attachment 2, hereto.

7.   I sent the e-mail referred to in ¶ 6 and Attachment 2 hereto to the following DHS officers on December 13, 2002, at 11:38 AM: Lead Detention Enforcement Officer William P. Sansone, Supervisory Detention and Deportation Officer Joseph A. O'Malley, and Deportation Officer Louis A. Mahar. I also archived the e-mail, and a printout of it is at Attachment 2, hereto.  An "archived" record of an e-mail sent or received is a record permanently saved.  Otherwise, my e-mail system will record messages

3

sent and received, but only for a period 90 days, after which such records automatically are erased.

8. My e-mail archives indicate that Supervisory Detention and Deportation Officer Joseph O'Malley opened the December 13, 2002, e-mail at 5:27 PM that same day, December 13, 2002. Attachment 2, hereto. My archives do not contain any receipt indicating that Lead Detention Enforcement Officer William P. Sansone, and Deportation Officer Louis A. Mahar ever opened this December 13, 2002, e-mail. A "receipt" is a record that an e-mail message has been opened. The absence of an archive of any receipt may mean either that the message was never opened at the other end, or that it was opened, but the receipt never archived and 90 days have since elapsed.

9. Although my e-mail archives do not contain a record of my having *sent* another e-mail on December 27, 2002, identical to my e-mail of December 13, 2002, apparently such an e-mail was sent, as a hard copy of it has been provided me by Supervisory Detention and Deportation Officer Joseph O'Malley. Attachment 3, hereto.

10. My own e-mail archives do contain records of the receipts by Officers William P. Sansone on December 27, 2002, Joseph A. O'Malley on February 5, 2003, and Louis A.

4

Mahar on December 30, 2002, respectively, of a December 27, 2002, e-mail by me bearing a subject identifier identical to my December 13, 2002, e-mail and to the December 27, 2002 e-mail received by Supervisory Detention and Deportation Officer Joseph O'Malley. See Attachment 4, hereto.

11.  Based upon the hard copy of the December 27, 2002, e-mail from me directed to Officers William P. Sansone, Joseph A. O'Malley, and Louis A. Mahar which was provided me by Supervisory Detention and Deportation Officer Joseph O'Malley (see Attachment 3), I have no reason to doubt that my own archived records of receipt by Officers William P. Sansone, Joseph A. O'Malley on the respective dates indicated in ¶ 10 do in fact reflect that those officers opened the same December 27, 2002, e-mail as that provided me by Supervisory Detention and Deportation Officer Joseph O'Malley, which in turn is identical to my e-mail sent on December 13, 2002.

12.  In the case of Gordon v. Ashcroft, et al., 02cv30199-MAP (D. Mass. filed Dec. 6, 2002), litigation proceeded and I filed response pleadings on behalf of the respondent.

13.  To the best of my recollection I received a voice mail on or around April 7, 2003, from attorney Michael

5

Moore, who indicated that Mr. Gordon had been deported.   I
immediately contacted the Travel Section of the Detention
and Removal section of the Bureau of Immigration and Customs
Enforcement ("ICE") and spoke to an officer who confirmed
that the deportation had occurred, and that Mr. Gordon, at
the time of our conversation, had already been on the ground
in Jamaica for around five hours.

14.   Prior to the telephone call from attorney Michael
Moore referred to in ¶ 13, I had no indication that Mr.
Gordon had been deported, or that he was even scheduled for
deportation.

15.   I received no indication by e-mail or otherwise
that Mr. Gordon was scheduled for deportation, though my e-
mails of December 13, 2002, and December 27, 2002, see
Attachments 2 and 3 hereto, directed that I be provided five
days advance notice of the scheduled deportation in order to
be able to notify the court of any scheduled deportation.

16.   I am informed by Supervisory Detention and
Deportation Officer Joseph O'Malley that the Boston District
of the ICE removed or deported 684 cases in Fiscal Year
2002, and to date in Fiscal Year 2003, 575 cases have been
deported or removed by the Boston ICE.

17.   I have been a Special Assistant United States

6

Attorney since April 1990, with responsibility for communicating federal court restrictions on the enforceability of removal, deportation, and exclusion orders in the district of Massachusetts to the responsible officers of the former Immigration and Naturalization Service and the Department of Homeland Security.  To my knowledge no Massachusetts district court habeas corpus petitioner has ever before been deported without compliance with any court-ordered notice.  The e-mail procedure I used in this case is routine, and my experience is that it has always worked until the case of Mr. Gordon.

18.  Efforts are underway to improve the notification system at ICE by developing a central database containing any federal court restrictions on the enforceability of deportation, removal, and exclusion orders in individual cases.

19.  On April 7, 2002, immediately upon learning that Mr. Gordon had been deported without compliance with the outstanding advance notice requirement in Gordon v. Ashcroft, et al., 02cv30199-MAP (D. Mass. filed Dec. 6, 2002), I informed the Assistant District Director for the detention and removal section, Bruce Chadbourne, of this fact, and he immediately -- that same day -- directed to his

7

subordinates that Mr. Gordon be returned to the United States.

20. Since April 7, 2003, I have been kept apprised of the continuing efforts of the ICE to return Mr. Gordon to the United States. However it appears that, as more completely described in the DECLARATION OF SUPERVISORY DETENTION AND DEPORTATION OFFICE JOSEPH O'MALLEY, ¶¶ 23-35, which I have read, Mr. Gordon does not want to return to the United States and has rejected all efforts of the ICE to voluntarily return him at government expense.

I declare, under penalty of perjury that the foregoing is true and correct.

Executed on: 5·20-2003
          Date

Frank Crowley
Special Assistant
United States Attorney
U.S. Dept. Homeland Security
Boston, Massachusetts

8

**ATTACHMENT 1**

A41 350 016

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD ANDRE GORDON,                )
              Petitioner          )
                              )
      v.                             )    Civil Action No.: 02-30199-KPN
                              )
JOHN ASHCROFT, Attorney General      )
of the United States, et al.,        )
              Respondents         )

DOCKETED

### ORDER
December 10, 2002

NEIMAN, U.S.M.J.

     Before the Court is a petition filed pursuant to 28 U.S.C. 2241. It is hereby ordered that the Clerk serve a copy of said petition on the United States Attorney and Frank Crowley, United States Immigration and Naturalization Service, Special Assistant U.S. Attorney, P.O. Box 8728, JFK Station, Boston, MA 02114.

     It is further ordered that the respondent file an answer or other responsive pleading within sixty(60) days of receipt of this Order.  The court also orders that the respondent provide the court with notice of any scheduled deportation or removal of the petitioner.

     IT IS SO ORDERED.

KENNETH P. NEIMAN
U.S. Magistrate Judge

UNITED STATES DISTRICT COURT
OFFICE OF THE CLERK
UNITED STATES COURTHOUSE
1550 MAIN STREET
SPRINGFIELD, MA 01103

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $500

02114+0037 37

Frank Crowley, AUSA
U.S. Attorney's Office
U.S. Immigration and Naturalization
Service
P.O.. Box 8728
Boston MA  02114



**ATTACHMENT 2**

**Date:**   12/13/2002 11:38 AM
**Sender:** Frank J Crowley
**To:**     Louis A Mahar; Joseph A O'Malley; William P Sansone
**Priority:** Urgent
         Receipt requested
**Subject:** USDC restriction Richard Andre GORDON A41 350 016

All:

This alien, Richard Andre GORDON (A41 350 016), has filed a habeas
corpus action in the Massachusetts USDC.

THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
MUST BE PROVIDED 48 HOURS (TWO (2) FULL BUSINESS DAYS) ADVANCE NOTICE
OF ANY SCHEDULED REMOVAL.   IN ORDER TO COMPLY WITH THE COURT'S ORDER,
NO REMOVAL MAY BE EFFECTED UNLESS SAUSA FRANK CROWLEY IS FIRST GIVEN
FIVE (5) FULL BUSINESS DAYS ORAL NOTICE OF SCHEDULED REMOVAL
(617-565-2415).

Frank Crowley/SAUSA/Boston

**Date:**     12/13/2002 5:27 PM
**Sender:** Joseph A O'Malley
**To:**       Frank J Crowley
**Priority:** Normal
**Subject:** Receipt of 12/13/02 11:38 AM message
Your message

    To:          Joseph A O'Malley
    Subject:    USDC restriction Richard Andre GORDON A41 350 016

    Sent:       12/13/2002 11:38:00 AM

was read on 12/13/2002 5:27:20 PM

**ATTACHMENT 3**

**Date:**   12/27/2002 10:38 AM
**Sender:** Frank J Crowley
**To:**     William P Sansone; Joseph A O'Malley; Louis A Mahar
**Priority:** Urgent
          Receipt requested
**Subject:** USDC restriction: Richard Andre GORDON, A41 350 016

All:
  This alien, Richard Andre GORDON (A41 350 016), has filed a habeas corpus
action in the Massachusetts USDC.
THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS MUST BE
PROVIDED 48 HOURS (TWO (2) FULL BUSINESS DAYS) ADVANCE NOTICE OF ANY
SCHEDULED REMOVAL.  IN ORDER TO COMPLY WITH THE COURT'S ORDER, NO REMOVAL
MAY BE EFFECTED UNLESS SAUSA FRANK CROWLEY IS FIRST GIVEN FIVE (5) FULL
BUSINESS DAYS ORAL NOTICE OF SCHEDULED REMOVAL (617-565-2415).

Frank Crowley/SAUSA/Boston

C Crowley

4921

**ATTACHMENT 4**

**Date:**    12/27/2002 3:16 PM
**Sender:** William P Sansone
**To:**    Frank J Crowley
**Priority:** Normal
**Subject:** Receipt of 12/27/02 10:38 AM message
Your message

    To:          William P Sansone
    Subject:     USDC restriction: Richard Andre GORDON, A41 350 016

    Sent:        12/27/2002 10:38:00 AM

was read on 12/27/2002 3:16:09 PM

**Date:**   12/30/2002 8:04 AM
**Sender:** Louis A Mahar
**To:**      Frank J Crowley
**Priority:** Normal
**Subject:** Receipt of 12/27/02 10:38 AM message
Your message

To:          Louis A Mahar
Subject:     USDC restriction: Richard Andre GORDON, A41 350 016

Sent:        12/27/2002 10:38:00 AM

was read on 12/30/2002 8:04:01 AM

**Date:** 2/5/2003 10:54 AM
**Sender:** Joseph A O'Malley
**To:** Frank J Crowley
**Priority:** Normal
**Subject:** Receipt of 12/27/02 10:38 AM message
Your message

To: Joseph A O'Malley
Subject: USDC restriction: Richard Andre GORDON, A41 350 016

Sent: 12/27/2002 10:38:00 AM

was read on 2/5/2003 10:54:58 AM

## DECLARATION OF JOSEPH O'MALLEY,
### SUPERVISORY DETENTION AND DEPORTATION OFFICER

Pursuant to the authority of 28 U.S.C. § 1746, I, Joseph O'Malley, Supervisory Detention & Deportation Officer at the Boston District Office of the Bureau of Immigration & Customs Enforcement (ICE), Department of Homeland Security, declare as follows:

1. I am a Supervisory Detention & Deportation Officer ("SDDO") assigned to the Boston District Staging Facility, Bureau of Immigration & Customs Enforcement ("ICE"), Department of Homeland Security.

2. In my official duties as an SDDO, I am responsible for the detention & removal/deportation of aliens against whom an administratively final order of removal/deportation exists, including Richard Andre GORDON ("Mr. GORDON").

3. Based upon my experience as an SDDO, and my review of the records under my control relating to the detention and removal of Mr. GORDON, I am able to give the following declaration based upon personal knowledge.

4. By decision of the Board of Immigration Appeals dated August 28, 1997, Mr. GORDON was determined to be subject to an administratively final order of deportation issued by an Immigration Judge on May 7, 1997.

5. Mr. GORDON entered into the custody of ICE/Boston on February 3, 2003.



6. Mr. GORDON was deported from the United States to Jamaica on April 7, 2003.

7. On December 13, 2002, Special Assistant United States Attorney Frank Crowley sent an e-mail advising that Mr. GORDON had filed a habeas corpus action in United States District Court (USDC) and that they required 48-hours (two full business days) notice of any scheduled removal. SAUSA Crowley further advised that he would require five full business days notice of any scheduled removal, in order that he could provide the requisite two day notice to the USDC.

8. This e-mail was sent to SDDO O'Malley, Deportation Officer Lou Mahar, and Lead Detention Enforcement Officer ("LDEO") William Sansone.

9. This e-mail was sent to SDDO O'Malley as he supervises the detention & removal functions of ICE/Boston at the Boston District Staging Facility.

10. This e-mail was sent to Deportation Officer Louis Mahar as his duties include the procurement of travel documents for aliens who are ready to be deported/removed from the United States. Deportation Officer Mahar procures travel documents from foreign Embassies/Consulates when there is no impediment to removal/deportation. Once a travel document is obtained, he sends the case to the ICE/Boston Travel Section, where the case is scheduled for removal/deportation.

11. The aforementioned e-mail from SAUSA Frank Crowley was sent to LDEO Sansone as he was assigned to the ICE/Boston Travel Section, and responsible for scheduling and arranging the removal/deportation of aliens from the United States. From an examination of the statistics available to me, the Boston District of the ICE removed or deported 684 cases in Fiscal Year 2002, and to date in Fiscal Year 2003, 575 cases have been deported or removed by the Boston ICE.

12. LDEO Sansone's duties included providing proper notice to SAUSA Frank Crowley on any cases that required notification to the United States District Court ("USDC") or the United States First Circuit Court of Appeals.

13. On December 27, 2003, an identical e-mail notice was sent by SAUSA Frank Crowley, advising that Mr. GORDON had filed a habeas corpus action in USDC and that a 48-hour notice (two full business days) of scheduled removal/deportation was required by the USDC, with a corresponding five business day notice to SAUSA Crowley. This was again sent to SDDO O'Malley, Deportation Officer Mahar, and LDEO Sansone.

14. On March 10, 2003, LDEO Sansone transferred to the position of Criminal Investigator/Special Agent with ICE/Boston, thereby relinquishing his duties in the ICE/Boston Travel Section, including the duty of providing

3

notification to SAUSA Crowley on any cases where the USDC or United States First Circuit Court of Appeals required notice of scheduled removal/deportation.

15. On March 10, 2003, Detention Enforcement Officer ("DEO") Alex Godinez assumed the duties that had been relinquished by LDEO Sansone. DEO Godinez had been assigned to assist LDEO Sansone in the ICE/Boston Travel Section since September 2002.

16. On March 10, 2003, DEO Mark Gentile was assigned to the ICE/Boston Travel Section. He had no prior experience in the ICE/Boston Travel Section.

17. From approximately March 10, 2003, until March 28, 2003, Special Agent Sansone, provided such occasional assistance and training as was possible to the ICE/Boston Travel Section, including DEO Mark Gentile and DEO Alex Godinez.

18. After travel documents were successfully obtained by Deportation Officer Louis Mahar, the file was sent to the Travel Section for scheduling of removal. On March 18, 2003, DEO Mark Gentile scheduled Mr. GORDON's removal for April 7, 2003, and on March 19, 2003 sent an e-mail notification of Mr. GORDON's scheduled deportation from the United States to Jamaica, indicating that he was scheduled for deportation on April 7, 2003.

19. This e-mail was sent to the following ICE/Boston officers and staff: SDDO O'Malley, SDDO Jim Martin, SDDO John Lawler, Deportation Officer Louis Mahar, Deportation Officer James Straut, Chief Detention Enforcement Officer Graig Galluzzo, Supervisory Detention Enforcement Officer Al Greenbaum, SDEO Domenic Federico, SDEO William Sullivan, LDEO Robert McNeice, DEO Alex Godinez, DEO Patrick Mullen, DEO Daniel Shepherd, and Deportation Assistant Isaura DaSilva.

20. This e-mail was not sent to SAUSA Frank Crowley.

21. DEOs Alex Godinez and Mark Gentile were unaware of the protocol of sending notification to SAUSA Frank Crowley where pending USDC or United States First Circuit Court of Appeals cases required notice, and were unaware of the existence of the particular e-mail(s) from SAUSA Frank Crowley advising of the obligation to provide SAUSA Frank Crowley with notice of the scheduling of Mr. Gordon's deportation.

22. As mentioned above (paragraph #6), Mr. GORDON was deported from the United States to Jamaica on April 7, 2003.

23. Subsequent to Mr. GORDON's deportation to Jamaica on April 7, 2003, ICE/Boston immediately initiated attempts to locate Mr. GORDON in Jamaica in order to advise him that he had the right to be returned to the United States to continue his USDC case.

24. On April 7, 2003, Deportation Officer James Straut contacted Mr. GORDON's attorney, Michael Moore, and left a voice-mail message asking him to contact either SDDO O'Malley or Assistant District Director Bruce Chadbourne with information pertaining to Mr. GORDON's location in Jamaica, or information on a family member who might be able to provide the same.

25. On April 11, 2003, SDDO O'Malley sent an e-mail to Charles Jean, the Officer-In-Charge of the ICE/Kingston, Jamiaica, office, requesting their assistance in locating Mr. GORDON in Jamaica. SDDO O'Malley provided a brief case history, biographic information, and a last-known-address for Mr. GORDON in Jamaica that was obtained from a review of Mr. GORDON's administrative alien-file.

26. On April 11, 2003, SDDO O'Malley called Attorney Michael Moore and left him a voice-mail message, requesting that he return my call and provide any information that he may have pertaining to Mr. GORDON's whereabouts in Jamaica, or any information on a family member who might be able to provide the same. SDDO O'Malley also sent a written tele-facsimile to attorney Moore requesting the same information. A receipt confirming the successful communication by tele-facsimile was generated and placed in Mr. GORDON's alien-file.

27. On April 14, 2003, an e-mail was received from ICE/Kingston, Jamaica.  The e-mail advised that the Jamaican Immigration authorities had been contacted and that they would provide ICE/Kingston, Jamaica, with the local address and telephone number given by Mr. GORDON when he arrived at Montego Bay, Jamaica on April 7, 2003. ICE/Kingston, Jamaica, stated that they would locate and advise Mr. GORDON of the situation as soon as they received the information.

28. On April 16, 2003, an e-mail was received from ICE/Kingston advising that Jamaican Immigration and local police had traveled to Mr. GORDON's address in Mount Salem, St. James, Jamaica. Mr. GORDON, however, was not there. Information of the situation was provided to Mr. GORDON's family at that address and they were asked to have Mr. GORDON contact ICE/Kingston, Jamaica.  ICE/Kingston, Jamaica, wrote that local police would attempt to locate Mr. GORDON at this address later that same day.

29. On April 16, 2003, Mr. GORDON's attorney, Michael Moore, called SDDO O'Malley. He provided Mr. GORDON's address in Jamaica as 57 Mount Salem, Main Road, St. James, Jamaica. He also provided the name of Mr. GORDON's mother, Janice Peart, who resides in the United States, and her telephone number (413-788-8960). Ms. Peart was called later that day by SDDO O'Malley, but there was no answer.

7

30. On April 16, 2003, SDDO O'Malley e-mailed ICE/Kingston, Jamaica, to request that they send any information on Mr. GORDON's location to CDEO Craig Galluzzo and Assistant District Director Bruce Chadbourne, in addition to himself. This was done to ensure that timely action could be taken in the event that Mr. GORDON was located and agreed to return to the United States.

31. On April 16, 2003, ICE/Kingston, Jamaica e-mailed SDDO O'Malley, acknowledging that notification would be made to CDEO Craig Galluzzo and Assistant District Director Bruce Chadbourne, in addition to SDDO O'Malley.

32. On April 18, 2003, SDDO O'Malley again called Mr. GORDON's mother, Janice Peart. She was not available and SDDO O'Malley spoke with another family member, who took SDDO O'Malley's name and telephone number and stated that Ms. Peart would arrive home soon. Ms. Peart called SDDO O'Malley at approximately 6:30PM the same day, April 18, 2003. SDDO O'Malley explained the situation regarding Mr. GORDON's removal, stating that he was deported to Jamaica without the proper notification being made to the United State District Court and that he had a right to return to the United States, with the return to the United States being arranged and funded by ICE. SDDO O'Malley also explained that if Mr. GORDON agreed to be returned to the United States to continue his pending United States District

Court case, he would remain in ICE custody until such time that his case was disposed of. Ms. Peart was asked if she had been in contact with Mr. GORDON since his deportation from the United States and if Mr. GORDON was aware of the situation that existed regarding his deportation to Jamaica and his right to be returned to the United States. She stated that she had been in contact with Mr. GORDON and attorney Michael Moore and that Mr. GORDON was aware of the current situation. When Ms. Peart was asked if Mr. GORDON would agree to be returned to the United States to continue his District Court case, Ms. Peart stated "Hell no", and stated that it made no sense for Mr. GORDON to return to detention in the United States when he was free in Jamaica. Ms. Peart was asked if she could provide a telephone number for Mr. GORDON in Jamaica. She stated that he had "no fixed number" and went on to say that he had no telephone. Ms. Peart stated that she would again contact Attorney Michael Moore. SDDO O'Malley provided Ms. Peart with CDEO Craig Galluzzo's name and telephone number to contact should Mr. GORDON agree to be returned to the United States.

33. On April 30, 2003, ICE/Kingston e-mailed and wrote that they had been contacted by the Jamaican Immigration authorities on April 28, 2003. Jamaican Immigration stated that they had located Mr. GORDON but that he was reluctant to return to the United States. They stated that Mr. GORDON

wanted to know if his return to the United States was mandatory or voluntary. ICE/Kingston, Jamaica, advised Jamaican Immigration that two ICE/Kingston, Jamaica, officers Km Ra and Officer In Charge Charles Jean, would be traveling to Montego Bay, Jamaica, the following day and that they would like to meet and speak with Mr. GORDON.

34. On April 29, 2003, these two ICE/Kingston, Jamaica, officers traveled to Montego Bay, Jamaica and visited the Jamaican Immigration office. There they spoke with Mr. GORDON via cell-phone at approximately 10:15AM. During this conversation, Mr. GORDON re-iterated that he had no interest in returning to the United States. ICE/Kingston officer Km Ra advised Mr. GORDON that his return to the United States was voluntary, but that they would like to see him in-person in order that they could meet and identify him and report that he refused to be returned to the United States. Mr. GORDON agreed to meet with the ICE/Kingston officers at 11:00AM at the Jamaican Immigration office in Montego Bay, Jamaica. By 2:30PM, Mr. GORDON had not arrived for the agreed upon meeting, nor did he call to state why he was not coming to the meeting. The two ICE/Kingston officers then departed Montego Bay, Jamaica.

35. As of this date, neither Mr. GORDON, nor his attorney Michael Moore, nor his any of his family members has contacted ICE/Boston or ICE/Kingston, Jamaica, to

indicate that Mr. GORDON desires to return to the United States to continue his United States District Court case. ICE, however, continues to be willing and able to expedite Mr. GORDON's return to the United States at government expense.

I declare, under penalty of perjury that the foregoing is true and correct.

Executed on: 05/19/2003
       Date

        Joseph O'Malley
        Bureau of Immigration & and
        Customs Enforcement,
        U.S. Dept. Homeland Security

11