## DECLARATION OF FRANK CROWLEY, SPECIAL ASSISTANT UNITED STATES ATTORNEY, DEPARTMENT OF HOMELAND SECURITY

Pursuant to the authority of 28 U.S.C. § 1746, I, Frank Crowley, Special Assistant United States Attorney, Department of Homeland Security, declare as follows:

1. I am a Special Assistant United States Attorney ("SAUSA") for the United States Department of Homeland Security ("DHS") in Boston, Massachusetts. Prior to March 1, 2003, the effective date of my DHS employment, I had been a SAUSA for the former United States Immigration and Naturalization Service since April 1990, an attorney for the Immigration and Naturalization Service beginning in 1984, and an employee of the Immigration and naturalization Service beginning in 1978.

2. My responsibilities now include defending the Department of Homeland Security in habeas corpus litigation filed in the Massachusetts district court.

3. In the course of immigration litigation in my experience frequently a court may order that it be provided advance notice of any scheduled deportation or removal of a habeas corpus petitioner.

4. It is my routine practice that when a court order affecting the ability of the Department of Homeland Security ("DHS"), Bureau of Immigration and Customs Enforcement ("ICE"), to execute an order of deportation, removal or exclusion, comes to my attention, or when the existence of a

habeas corpus action challenging the validity of such an order in an individual case comes to my attention, I generate and send an e-mail to a certain list of Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE") officers in the ICE Detention and Removal Operations ("DRO", "Detention and Removal") section, which is responsible for executing removal orders, indicating that a habeas corpus action has been filed by a certain alien, and that:

> "THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS MUST BE P**ROVIDED 48 HOURS (TWO (2) FULL BUSINESS DAYS ADVANCE NOTICE** OF ANY SCHEDULED REMOVAL.  IN ORDER TO COMPLY WITH THE COURT'S ORDER, NO REMOVAL MAY BE EFFECTED UNLESS SAUSA FRANK CROWLEY IS FIRST GIVEN **FIVE (5) FULL BUSINESS DAYS** ORAL NOTICE OF SCHEDULED REMOVAL."

If a court orders some other period of advance notice, a similar e-mail notice is sent out reflecting the terms of the court order and a corresponding margin of time for personal oral notice to be me in order to for me to be able to in turn provide the ordered notice to the court.

5. The reason that I routinely require personal *oral* notice of such schedulings of removal from DRO officers is as a failsafe mechanism to ensure that such notice is calculated to be brought to my attention in order that I be able to provide notice to a court as ordered.

6. Upon information and belief after inquiry, approximately 2,252 aliens were deported or removed from the

Boston Field Office of ICE in Fiscal Year 2004. Batch e-
mails addressed to a group list of 33 ICE employees are
routinely mass-mailed for groups of aliens to be removed on
certain dates. It is not unusual for some scheduled
removals to be canceled, and additional e-mails are then
sent relating to these cancellations.

7. I always do scan these names for recognition, but I
routinely direct in writing that I be provided personal *oral*
communication of notice of scheduled removals in cases
pending in the United States District Court so that nothing
important gets lost or overlooked in the great volume of
daily e-mail traffic.

8. When I am provided notice of a scheduled date by
ICE Detention and Removal Operations -- usually subsequent
to a phone discussion -- I then file a Notice of Intent to
Execute the order with the court when there is time to do
so, and also telephone the Clerk of Court to advise of the
filing.

9. Although this routine practice was in place, in the
case of Gordon v. Ashcroft, 283 F.Supp.2d 435 (D. Mass.
2003) an alien was removed from the United States despite
the court's requirement that it be provided advance notice.
In that case I never received any notice of the scheduled
removal. After examining declarations submitted in that
case, the Court in Gordon was satisfied that the removal was

3

"entirely accidental", id. at 436.  However that accidental removal revealed the need for a central database containing records of court stays and restrictions on the removability of aliens with pending litigation.

10.  In collaboration with the local Information Technology ("IT") section of the Department of Homeland Security in Boston, Massachusetts, I was able to design the concept, initiate, and ultimately bring online a Microsoft Access® database application denominated as the "Stays Database" around the beginning of April 2004.  In connection with the Stays Database coming online, I also authored and distributed two Stays Database User Guides as training tools, one of which was addressed to ICE Office of Chief Counsel attorney users explaining the process of entering database records of stay and restriction on removability, and the other of which was addressed to ICE Detention and Removal Operations officer users, explaining the process for searching for and printing out records of stay and restriction, and emphasizing the need for and desirability of using the Stays Database.  See Attachment A, Stays Database User Guide for Detention and Removal officers.

11.  The Stays Database was made available to DRO supervisory officers, and to those other Detention and Removal officers identified by Detention and Removal supervisors as those who would routinely use the database.

4

12. Since the Stays Database came online in April 2004, each time there is a litigation-related stay or restriction on the deportation or removal of an alien in the Massachusetts United States District Court, and where the alien is under the control of the Boston ICE Detention and Removal Field Office, the pertinent details are entered into the Stays Database by ICE attorneys (including myself), advising as to the terms of the stay or, if no stay, the terms of any notice requirement or other restriction on removal.

13. The Stay Database serves as a double check against any removals, although ICE officers do not ignore any other indicia that there is a stay or restriction and can resolve any doubt in this respect by calling the duty attorney at the Boston Office of the Chief Counsel.  Attachment  B, Stays Database Login Screen.

14. On August 31, 2004, I received a telephone call from Massachusetts United States District Court Pro Se clerk Marjorie Lanier advising as to the filing of a pro se habeas corpus action in Massachusetts United States District Court by the petitioner in the instant case, Carlyle Phillip, and inquiring as to the removal status of the petitioner.  My recollection is that after inquiry to Detention and Removal officers, I advised attorney Lanier that the petitioner was not at that time presently scheduled because travel

documents had not been issued by Trinidad and Tobago, but that no special problems were expected in obtaining those travel documents.

15. Also on August 31, 2004, having just been informed of the existence of the new case, I created a record in the Stays Database under the name and Alien File number relating to Carlyle Phillip, which indicated that:

> "THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS MUST BE PROVIDED 48 HOURS (TWO (2) FULL BUSINESS DAYS ADVANCE NOTICE OF ANY SCHEDULED REMOVAL. IN ORDER TO COMPLY WITH THE COURT'S ORDER, NO REMOVAL MAY BE EFFECTED UNLESS SAUSA FRANK CROWLEY IS FIRST GIVEN FIVE (5) FULL BUSINESS DAYS ORAL NOTICE OF SCHEDULED REMOVAL."

<u>See</u> Attachments C, Screenshot of Stays Database record, and Attachment D, Printout of Stays Database record, relating to Carlyle Phillip.

16. Also on August 31, 2004, I sent an "URGENT" priority e-mail to a list group of Detention and Removal officers advising of the filing by Carlyle Phillip of a habeas action in United States District Court, advising in language identical to the Stays Database record entry that:

> "THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS MUST BE **PROVIDED 48 HOURS (TWO (2) FULL BUSINESS DAYS ADVANCE NOTICE** OF ANY SCHEDULED REMOVAL. IN ORDER TO COMPLY WITH THE COURT'S ORDER, NO REMOVAL MAY BE EFFECTED UNLESS SAUSA FRANK CROWLEY IS FIRST GIVEN **FIVE (5) FULL BUSINESS DAYS** ORAL NOTICE OF SCHEDULED REMOVAL."

<u>See</u> Attachment E, E-mail from SAUSA Frank Crowley to Detention and Removal officers.

17. In addition to again requesting 5 business days oral notice of the scheduled removal of Carlyle Phillip, my e-mail of August 31, 2004, further advised:

> "Please be advised that a Record of Stay/Restriction of removal has been now entered in the **STAYS Database** relating to this alien. Before taking any further enforcement action, please carefully review that Record of Stay/Restriction in the **STAYS Database** immediately for a complete account of the details concerning the limitations on the removability of this alien."

Attachment E.

18.  On November 23, 2004, I received two separate e-mails from Boston ICE Deportation Officer Timothy T. Stevens requesting the administrative file relating to Carlyle PHILLIP, requesting an update on the pending United States District Court litigation, and also inquiring whether there was any stay of removal in the case.  I responded to Officer Stevens by two separate e-mails that the USDC case was still pending decision, and that there was USDC notice-of-scheduled-removal restriction requirement, as set out in the STAYS Database, but no stay.  See Attachment F.

19. On February 25, 2005, an e-mail was sent by Chief Immigration Enforcement Agent James Brown to other Detention and Removal officers indicating that a "tentative removal date" of March 23, 2005, was set for Carlyle PHILLIP. Attachment G.

20. Upon information and belief after inquiry, approximately 2000 aliens are deported or removed by Boston ICE annually in recent years, and batch e-mails of scheduled dates and cancellations of dates are sent out for these aliens regardless of whether the individual aliens have cases pending federal litigation, or whether they have stay or restriction records in the Stays Database.

21. On Saturday, March 26, 2005, an e-mail was sent by Immigration Enforcement Agent Brian Churchill to a list group of 33 ICE employees -- including myself and other attorneys in the Boston Office of Chief Counsel -- indicating that two particular aliens were scheduled for removal to Trinidad and Tobago on April 7, 2005, one of whom was Carlyle Phillip. See Attachment I.  That e-mail does not identify Carlyle Phillip as an alien with a pending United States District Court case for whom notice to the Court was required, or in any way distinguish itself from similar batch mailings for approximately 2000 aliens removed yearly by the Boston Detention and Removal section.

22. On April 7, 2005, Carlyle PHILLIP was removed to Trinidad and Tobago as scheduled.

23. At no time was I ever provided oral notice of the scheduled removal of Carlyle PHILLIP, as I had directed both in my "URGENT" priority e-mail dated August 31, 2004, and my record entry of Stay/Restriction dated August 31, 2004.

8

24. Although e-mail records recently made available to me indicate that this Saturday March 26, 2005, e-mail was opened by me, I do not remember reading it and recognizing the name as relating to a pending Stays Database and United States District Court case.  I declare that I was unaware of Phillip's removal until early September 2005, when I opened an e-mail from Deputy Clerk Denis O'Leary and as requested subsequently checked on the location of Carlyle Phillip to learn for the first time that he had been removed on April 7, 2005.  I declare that at no time did I have any intent to violate the Court's advance notice requirement, nor any reason to think that my routine practice in such cases would result in a failure to comply with the Court's order.

25. If the name of Carlyle Phillip had registered with me as relating to a pending United States District Court case and Stays Database record, I would have immediately filed a Notice of Intent to Execute Removal Order with the Court or, if time was insufficient for the ordered notice prior to the scheduled removal, I would have directed that the scheduled removal be cancelled.

26. The reason I have routinely directed by "URGENT" priority e-mail and Stays Database record entry that "no removal be effected unless SAUSA Frank Crowley is first given five (5) full business days oral notice of scheduled removal" is precisely to eliminate the possibility of

inadvertent oversight of court orders by assuring that such important matters be brought timely to my personal attention by phone call or in-person discussion, i.e., by oral notice.

27. Since the Stays Database came online in April 2004, 774 records of stay or restriction have been logged into the database.

28. To my knowledge, since the Stays Database has come online in April 2004, the case of Carlyle Phillip is the only case in the Massachusetts United States District Court where an alien was removed from the United States without compliance with court-ordered advance notice.  (In a few pro se cases over the years, the habeas petitions were not even filed until after the aliens had been removed (presumably due to necessary processing in the Pro Se Clerk's office), and of course any court-ordered advance notice of removal could not be complied with because any Court order post-dated the actual removal).

29. Because of the variety of factual and legal contexts in which immigration habeas corpus cases arose in my practice, as set out below, and the fact that I myself would often initiate the dialogue for ascertaining the scheduled removal date for a habeas litigant, it appears that Detention and Removal officers considered routine e-mail traffic to be sufficient notice, while I was expecting oral notice, and that this disconnect did not come to light

before the instant violation of the Court's order
illustrated the problem.

30. In practice, colorable habeas corpus actions that
challenged only the lawfulness of detention qua length of
detention under Zadvydas v. Davis, et al., 533 U.S. 678 701
(2001), generally were defended where possible by providing
the Court with declaration information that a removal date
was scheduled for a date certain.  The notice to the Court
of a scheduled removal dated supported the government's
position that there was no unlawful detention because the
petitioner's scheduled removal was necessarily "reasonably
foreseeable" under the rule in Zadvydas.  For these cases
and in order to prepare this defense, I myself would contact
the Chief Immigration Enforcement Agent to determine what
the removal date would be.  With this date I then filed a
motion to dismiss, memorandum in support of motion to
dismiss, and a notice of intent to execute removal order.
In sum, for this class of cases, I would receive oral notice
of the removal date from the Chief Immigration Enforcement
Agent, but at my own initiative in order to defend the
habeas case.

31. In another class of habeas cases, I would move for
dismissal of the habeas case and the case would be decided
relatively quickly prior to scheduling of removal.  In these

cases, any notification requirement to the Court was mooted by the case disposition.

32. In yet another class of cases, a petitioner's habeas case would be attended by the petitioner's refusal to cooperate in obtaining the necessary travel authorizations ("travel documents") from the foreign government, or by a petitioner's outright physical refusal to board his/her removal flight. Also, foreign governments might not issue the requested documents for a number of reasons, or no reason, or might be otherwise markedly sluggish in responding to the ICE travel documents request. In these cases, the issue of oral notice to me of a removal date never arose before the case was disposed of by the Court before any removal could be effected.

33. In still other cases, a habeas action would be filed by petitioner at the 11th-hour, when a removal date had already been scheduled.  The filing of such a case would almost always be brought to my immediate attention by a session clerk or a Pro Se clerk of the Court, and I would then ascertain the removal status of the petitioner.  Upon determining in such a case that removal was already scheduled, I would if possible file a dispositive motion and notice of intent to execute removal order with the Court, or if time did not permit, call the session or Pro Se clerk to advise of imminent removal of the petitioner.  In these

emergent cases there was necessarily either a case decision or an affirmative stay or stay denial order by the Court, so oral notice from ICE Detention and Removal officers was not implicated because I would have already initially ascertained the removal date from the Chief Immigration Enforcement Agent upon my own initiative.

34. As to cases such as the Phillips case, where the case was pending determination of the government's motion to dismiss for a substantial period time and so disposition of the case did not precede a successful effort to obtain travel documents and removal scheduling, I do not recall any uniform practice as to who would call me with the removal date, and it may be because there were not that many cases in the same procedural fact pattern as Phillip.

35. The failure of notice to the Court in this case illustrates a failing in the Stays Database system process as it relates to ensuring compliance with court-ordered advance notice of removal.  I have no reason to think that the failure to provide oral notice to me in the Phillip case was due to anything other than an honest, albeit unfortunate, divergence of expectations between the ICE Detention and Removal section and the Office of Chief Counsel regarding the form and adequacy of providing advance notice of removal to me in those cases where I requested oral notice.  It appears to me that any such division of

expectations as to provision of Court-order notice of scheduled removal was related to the non-uniform nature of the various habeas corpus cases themselves, and to the correspondingly various means by which I was made aware of scheduled removal dates.  See ¶¶ 30-34 supra.

36. In order to attempt to remedy the deficiency in the Stays Database system illustrated by the Phillip case, a work group composed of ICE attorneys, United States Attorneys Office attorneys, and ICE Detention and Removal Officers has convened to make improvements to the Stay Database.

37. In light of the experience of this case and some 15 years experience as a Special Assistant United States Attorney representing the government in immigration cases in the Massachusetts United States District Court, and having substantially collaborated personally in the design of the Stays Database I believe at this time that the modification to the Stays Database most likely to eliminate non-compliance with court orders relating to immigration habeas corpus cases are complied with is a plan substantially in accordance with the following principles:

> 1. The Stays Database is modified to allow Detention and Removal Officers to search the system for records and to print out one of two possible records for any given name and Alien Number query: either a **No Record** printout, or a **Litigation Clearance for Removal Approved** printout.  If there is no active Stays Database record for a particular alien, Detention and

Removal Officers can print out a record that says that.

2. If there *is* a stay or restriction record, it will require an affirmative clearance by a government attorney to activate a control on the Detention and Removal user interface of the Stays Database that will then allow the Detention and Removal Officer to print out a **Litigation Clearance for Removal Approved** record. This clearance will not be allowed by the government attorney until and unless all notice or other orders of the court are satisfied or complied with.

3. The Detention and Removal Section should not execute any removal order or transfer any alien beyond its control unless it has checked the Stays Database as close in time as practicable to the actual removal of the alien and has been able to print out either a **No Record** response, or a **Litigation Clearance for Removal Approved** response, and place that in a prominent place in the administrative Alien File.

38. The practical effect of these changes is to establish a default rule that no alien will be removed or transferred from the Boston ICE office unless the Stays Database is checked and it is determined by a system print-out to be placed in the relating alien file that either: 1) the alien does not have *any* active record of a stay or restriction on removability; or 2) the alien does have a record of a restriction (such as a requirement that notice of removable be provided the Court), but that the government attorney has affirmatively approved Litigation Clearance for the alien's removal after having satisfied himself/herself

that there has been compliance with any Court orders or restrictions.

39. Finally it should be noted that to the extent that the enactment of the Real ID Act on May 11, 2005, now "strips the district court of habeas jurisdiction over final orders of removal", Ishak v. Gonzales, 422 F.3d 22, 29 (1st Cir. 2005), the procedural opportunity for any recurrence of failure of Court notice in a case such as Phillip is further attenuated.

I declare, under penalty of perjury that the foregoing is true and correct.

Executed on:  _10-20-05_    /s/ Frank Crowley
              Date          Frank Crowley
                            Special Assistant
                            United States Attorney
                            U.S. Dept. Homeland Security
                            Boston, Massachusetts

**ATTACHMENT A**

# STAYS DATABASE USER GUIDE



Prepared by:

**Frank Crowley SAUSA**

Office of Chief Counsel
Immigration & Customs Enforcement
Department of Homeland Security
Boston, Massachusetts

## STAYS DATABASE USER GUIDE

*LEGAL DISCLAIMER: This database contains records of stays and restrictions on the removal of certain aliens issued by federal courts, the EOIR, and other sources, known to the Office of Chief Counsel, Boston, MA, when entered into this database. The database does not necessarily contain stay records relating to class wide policy stays, executive or legislative stays (e.g., TPS status), or class wide judicial injunctions effecting stays. The database is not designed to record cases where a previously final order of removal deportation or exclusion has been reopened. While every effort is made to keep this database in real-time, the fact that there may be no record of stay/restriction in this database does not mean that there is no stay in effect, because the existence of a stay may not have been reported or known to the Office of the Chief Counsel and entered into the database. Therefore, do not disregard other evidence of the existence of a stay simply because there is no record of a stay in the database. Resolve any doubt as to whether a stay or restriction exists by calling the Boston Office of the Chief Counsel Duty Attorney at 617-565-3140.*

A. DRO Users:

To check an A# for any stays or restrictions on removals on the STAYS DATABASE ("DB")--

1.    First double-click on the STAYS DATABASE icon and then enter your USER ID and password;

2.    A full screen comes up.  Click on "FILE" at the top left, then click on "**FIND RECORD**";

3.    A new smaller window opens on the page where you must enter the 8-digit A# three times. Do not enter an "A", just the 8 digits of the A#, with no spaces between the numbers. You must hit "enter" after each entry of the 8-digit number.  The DB will not accept more or fewer than the 8 digits.  You must enter the 8-digit number correctly three times (i.e., you must enter the *same number* without error three times).

4.    When you have entered the A# three times, you will get either a green (green light means go) "NO RECORD FOUND" window if there is no active record of a stay or restriction in the DB, or you will get a red (red light means STOP) full screen "STAY IS IN EFFECT-DO NOT REMOVE" hit.

**NO RECORD FOUND**- The green (for go) "NO RECORD FOUND" window allows you to print a record that the DB does not contain any record or restriction on execution of the removal or deportation order. The printout is time and date stamped; in other words, it is evidence only that there is nor record of stays or restrictions *at the time it is printed*. **The DB is only useful when you use it.** A "NO RECORD FOUND" printout dated 2 weeks prior to removal does not say anything about whether a stay is in effect on the date of removal. To know whether there is a stay or restriction in effect at a particular time and date, you must check the DB *at that time and date.* There is every incentive to check the DB -- and print out the record -- as closely as possible to the time and date of removal. The "NO RECORD FOUND" printout is the paper evidence that there was no indication in the DB of any stay or restriction at the time of removal, only if it is printed out at that time. **The DB is only useful when you use it.**

**STAY IS IN EFFECT- DO NOT REMOVE** Stays/Restrictions Record Hit -- If the DB contains an active record of stay or restriction, you will get the full screen red (for stop) "STAY IS IN EFFECT-DO NOT REMOVE" record. Every active record of a stay *or* restriction will indicate "STAY IS IN EFFECT-DO NOT REMOVE", even if technically speaking there is only a **restriction** (e.g., notice of intended removal must be filed with the court some period in advance of enforcement of the order).

**The complete terms of the stay or restriction must be examined** in the case comments and in the white "USDC Restriction", "CCA [Circuit Court of Appeals] Restriction", and "Other Restriction" text blocks. Only then can you tell whether there is a stay (absolute prohibition on enforcement of the removal order), or some kind of restriction that will permit enforcement of the order under certain conditions. In order to read the entire text blocks, you may need to **operate the scroll bar up and down** at the right of the block.

If you want to print a copy of the "STAY IS IN EFFECT-DO NOT REMOVE" record hit, click on "FILE" at the top left of the screen, then select and click "PRINT". The printout, reflecting the record itself, will contain the time and date stamp of when the stay/restriction was entered into the DB, as well as when it was printed.

It is also *possible* to also search the DB by Name Search, but you should use this function only as a backup search against the possibility that the wrong A# was entered for the alien.  That said, however, to use the Name Search feature: 1. CANCEL the A# search box that pops up after sign-in; 2. select FILE/OPEN from the menu; 3. type in the Name in the Search Criteria box, and click Search.  If there is an active record, it will appear highlighted in blue about two-thirds of the way down the screen; you can either double-click on it or click Select to bring up the record.

<u>DRO USER QUICK-GUIDE</u>

To Search for a Stay/Restriction Record in the STAYS Database:

1.    Click on the STAYS database icon.

2.    Log in by entering USER NAME and PASSWORD.

3.    Enter 8-digit A#, without "A", identically three times.

4.    If you want to print a copy of a record hit indicating "STAY IS IN EFFECT-DO NOT REMOVE", select FILE/PRINT.

5.    If you want to print a copy of the "NO RECORD LOCATED FOR THIS ANUMBER" response, click on the Print command on the response itself.

**ATTACHMENT B**



**STAYS/RESTRICTIONS SYSTEM LOGIN**

LEGAL DISCLAIMER

This database contains current records of stays and restrictions on the removal of certain aliens issued by federal courts, the EOIR, and other sources, known to the Office of Chief Counsel, Boston, MA, when entered into this database. The database does not necessarily contain stay records relating to class wide policy stays, executive or legislative stays (e.g., TPS status), or class wide judicial injunctions effecting stays. The database is not designed to record cases where a previously final order of removal deportation or exclusion has been reopened. While every effort is made to keep this database in real-time, the fact that there may be no record of stay/restriction in this database does not mean that there is no stay in effect, because the existence of a stay may not have been reported or known to the Office of the Chief Counsel and entered into the database. Therefore, do not disregard other evidence of the existence of a stay simply because there is no record of a stay in the database. Resolve any doubt as to whether a stay or restriction exists by calling the Boston Office of the Chief Counsel Duty Attorney at 617-565-3140.

USER NAME

PASSWORD

OK          Exit

ATTACHMENT C

**STAYS/RESTRICTIONS DATABASE**

File   Edit   Reports   Help

A-NUMBER [          ]     ALIEN NAME [Philip Carlyle]

USDC Stay/Restriction [☑]     CCA Stay/Restriction [☐]     EOIR Stay/Restriction [☐]     Other Stay/Restriction [ ]

EXPIRATION DATE [INDEFINITE]

USDC Restriction: THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS MUST BE PROVIDED 48 HOURS (TWO (2) FULL BUSINESS DAYS) ADVANCE NOTICE OF ANY SCHEDULED REMOVAL. IN ORDER TO COMPLY WITH THE COURT'S ORDER. NO REMOVAL MAY BE EFFECTED UNLESS SAUSA FRANK CROWLEY IS FIRST GIVEN FIVE (5) FULL BUSINESS DAYS ORAL NOTICE OF SCHEDULED REMOVAL (617-565-2415). USDC case

CCA Restriction: [          ]

Other Restriction: [          ]

CASE COMMENTS: [          ]

| DATA ENTRY DATE/TIME | ENTERED BY | UPDATED DATE/TIME | |
|---|---|---|---|
| 8/31/2004 1:40:58 PM | fcrowley | 9/2/2004 3:31:27 PM | fcrowley |

Start   N..  D..  P..  u..  F..  S...  F..  P..     Desktop »

ATTACHMENT D

**U.S. DEPARTMENT OF HOMELAND SECURITY**



| **A-NUMBER** 79673689 | **STAYS/RESTRICTIONS RECORD** |
|---|---|

**ALIEN NAME**   Phillip, Carlyle

**USDC STAY** [X]    **CCA STAY** [ ]    **EOIR STAY** [ ]    **Other STAY** [ ]

**EXPIRATION DATE**   INDEFINITE

**USDC RESTRICTION**

THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS MUST BE PROVIDED 48 HOURS (TWO (2) FULL BUSINESS DAYS) ADVANCE NOTICE OF ANY SCHEDULED REMOVAL.  IN ORDER TO COMPLY WITH THE COURT'S ORDER, NO REMOVAL MAY BE EFFECTED UNLESS SAUSA FRANK CROWLEY IS FIRST GIVEN FIVE (5) FULL BUSINESS DAYS ORAL NOTICE OF SCHEDULED REMOVAL (617-565-2415). USDC case No.04cv11896MLW(D. Mass. filed 2004).

**CCA RESTRICTION**

**OTHER RESTRICTION**

**COMMENTS**

RECORD ENTERED  8/31/2004 1:40:58 PM  BY fcrowley    UPDATED  9/2/2004 3:31:27 PM  BY fcrowley

ATTACHMENT E

**Date:**     8/31/2004 1:53 PM
**Sender:** Frank J Crowley
**To:**       William J Sullivan; Joseph A O'Malley; Jim Martin; Louis A Mahar; John J Lawler; Henry C
              Harrison; Alan Greenbaum; Alex C Godinez; Craig Galluzzo; Domenico Federico; James
              Dupont; Isaura F DaSilva; Brian S Churchill; Bruce Chadbourne
**Priority:** Urgent
              Receipt requested
**Subject:** USDC Restriction: Carlyle PHILLIP A79 673 689

This alien, **Carlyle PHILLIP A79 673 689,** has filed a
habeas action in MA USDC. No 04cv11896-MLW (D. Mass.
2004)

THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
MASSACHUSETTS MUST BE **PROVIDED 48 HOURS (TWO (2) FULL
BUSINESS DAYS) ADVANCE NOTICE** OF ANY SCHEDULED
REMOVAL.   IN ORDER TO COMPLY WITH THE COURT'S ORDER,
NO REMOVAL MAY BE EFFECTED UNLESS SAUSA FRANK CROWLEY
IS FIRST GIVEN **FIVE (5) FULL BUSINESS DAYS** ORAL
NOTICE OF SCHEDULED REMOVAL (617-565-2415).

Please be advised that a Record of Stay/Restriction
of removal has been now entered in the **STAYS Database**
relating to this alien. Before taking any further
enforcement action, please carefully review that
Record of Stay/Restriction in the **STAYS Database**
immediately for a complete account of the details
concerning the limitations on the removability of
this alien.

If this alien is detained, please **inform me ASAP of
any change in the place of detention of this alien,**
as I will need to know in order to serve the alien
with papers filed in the USDC.

Frank Crowley/SAUSA/Boston

ATTACHMENT F

**Date:**    11/23/2004 12:47 PM
**Sender:** Frank J Crowley
**To:**    Timothy T Stevens; John J Lawler
**cc:**    Melinda R Lull
**Priority:** Normal
        Receipt requested
**Subject:** Re[3]:FILE REQUEST  A79673689   PHILLIP

Tim-

Just like the STAYS DataBase says:  The is a restriction of a **notice** requirement of scheduled removal to
the USDC, but no stay.

Frank

                    Reply Separator
Subject:    Re[2]:FILE REQUEST  A79673689    PHILLIP
Author:     Timothy T Stevens
Date:       11/23/2004 12:21 PM

Frank

Is there a STAY in this caee??

Tim

                    Reply Separator
Subject:    Re:FILE REQUEST  A79673689    PHILLIP
Author:     Frank J Crowley
Date:       11/23/2004 10:49 AM

Case is still pending a decision from Judge Wolf.  Robin Scott will be transmitting the A-file to you asap.

Frank

                    Reply Separator
Subject:    FILE REQUEST  A79673689    PHILLIP
Author:     Timothy T Stevens
Date:       11/23/2004 10:10 AM

FRANK

THE ABOVE FILE IS CHARGED TO YOU.  I NEED THE FILE FOR A POCR REVIEW.  CAN YOU FORWARD ME THE FILE AND UPDATE
ON THE PENDING LITIGATION.

THANKS

ATTACHMENT G

**Date:** 2/25/2005 9:18 AM
**Sender:** Jim Brown
**To:** William J Sullivan; Henry C Harrison; Alan Greenbaum; Domenico Federico; Tony Budd;
Jim Brown; Jim Martin; Timothy T Stevens; James Dupont; William R Pitts; Jose Molina;
Alex C Godinez; Brian S Churchill
**Priority:** Normal
**Subject:** PHILLIP

Attn: Travel Unit Coordinators and Consulate Liaison Unit:

The tentative removal date, by escort, for the case of PHILLIP, Carlyle A# 79-673-689 will be 3/23/05.

This date must be confirmed by Centralized Ticketing before it is set in stone, however this should be acceptable.

JB

*[handwritten: MR. Bagn - Det: 8-27-04]*

*[handwritten: Follow up TP]*

*[handwritten: 3/8/05 Alex — Schedule on or around 3/23/05 & pass onto Pitts for document. JB]*

ATTACHMENT H

This file has been reviewed and is cleared for removal.

The alien should be scheduled as a:

_____    Non-Escort Commercial Flight

_____    JPATS

~~XXXXXX~~    ESCORT

Reason: *AiBon PERSON UNDER 14*

Reviewed by: James E. Brown, Jr.   CIEA/BOS

Date of Review/Clearance: 3/2/05

ATTACHMENT I

**Date:** 3/26/2005 10:53 AM
**Sender:** Brian S Churchill
**To:** William J Sullivan; William H Richards; Joseph A O'Malley; Richard D Neville; Patrick Mullen; Efrain Perez; Frederick J McGrath; Jim Martin; Louis A Mahar; John J Lawler; Alan Greenbaum; Jim Brown; Domenico Federico; Claudia English; Isaura F DaSilva; Frank J Crowley; Cornelius T Cashman; Alex C Godinez; Robin Scott; Mary E Riordan; Henry C Harrison; Gwendylan Tregerman; Cheryl A Bassett; Paul Sterling; Walter T Smith; Kevin W Jarvis; Daniel J Shepherd; Timothy T Stevens; William Chambers; Michael M Carvalho; GREGORY NEVANO; Michael A Homsy; Michael F Naughton
**Priority:** Urgent
**Subject:** ESCORTED REMOVAL - 07APR05

The following escorted alien(s)are *scheduled* for removal from the United States to Trinidad on 07APR05:

# I have attached the **OFFICER ITINERARIES** as well as the Detail **391**.   SEE BELOW!!

| Name | Det. Loc. | A# |
|------|-----------|-----|
| MOHAMMED, Stephen Lee | Suffolk | 76 960 211 |
| PHILLIP, Carlyle | Plymouth | 79 673 689 |

The attached 391 is for detainee(s) scheduled to be removed.  The Travel Envelope will remain in the Travel Office until one week before the date of the detail.  If it is not down at South Bay by then you can call the Travel office but we are probably just waiting on a travel document or tickets before we send it to you.

Please arrange for the transfer of the alien to South Bay.  If a consulate appointment is required another e-mail will be sent with the appropriate 391 attached.

DETAIL 391



07APR05
TRINIDAD.xls

OIC of Detail:
Naughton

Escorting officers:
Galluzzo, Homsy, Harrison

Please make sure all the officers on your detail receive their itinerary and ensure that all the required paperwork and airline tickets are in the Document envelope <u>before</u> the day of the detail.

*No changes can be made to the itineraries below.  CHECK THEM TO MAKE SURE THEY ARE CORRECT!!  DO NOT call Omega World Travel for ANYTHING.  Find your name and print your itinerary:*

The itineraries will be sent to you via email directly.

Thank you,

Brian S. Churchill
Boston - ICE